Kathleen E. Brody, AZ Bar No. 026331
Darrell L. Hill, AZ Bar No. 030424
ACLU Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
kbrody@acluaz.org
dhill@acluaz.org

Brian Hauss (*pro hac vice*)
Vera Eidelman (*pro hac vice*)
Ben Wizner (*pro hac vice*)
ACLU Foundation, Speech, Privacy & Technology Project
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
bhauss@aclu.org
veidelman@aclu.org
bwizner@aclu.org

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Mikkel Jordahl; Mikkel (Mik) Jordahl, P.C., <br><br> Plaintiffs, <br> v. <br><br> Mark Brnovich, Arizona Attorney General; Jim Driscoll, Coconino County Sheriff; Matt Ryan, Coconino County Jail District Board of Directors Member; Lena Fowler, Coconino County Jail District Board of Directors Member; Elizabeth Archuleta, Coconino County Jail District Board of Directors Member; Art Babbott, Coconino County Jail District Board of Directors Member; Jim Parks, Coconino County Jail District Board of Directors Member, all in their official capacities, <br><br> Defendants. | No.: 17-cv-08263-PCT-DJH <br> **FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1

# COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## PRELIMINARY STATEMENT

1. Pursuant to a recently enacted law, House Bill 2617, A.R.S. § 35-393.01 ("HB 2617" or "the Act"), the State of Arizona requires government contractors to certify that they are not engaged in boycotts of Israel or territories controlled by Israel. Plaintiff Mikkel Jordahl participates in a political boycott of consumer goods and services offered by businesses supporting Israel's occupation of the Palestinian territories. He is also the sole owner of a law firm that contracts with the Coconino County Jail District to provide legal services to incarcerated individuals. In order to renew his contract, Mr. Jordahl would have to certify that his firm neither participates in a boycott of Israel nor affiliates with entities engaged in a boycott of Israel. Mr. Jordahl does not want to sign this certification, but he fears the loss of his firm's government contracts. The Act's certification requirement violates the First and Fourteenth Amendments by requiring Mr. Jordahl's firm and other government contractors to disavow their participation in political boycotts.

## JURISDICTION AND VENUE

2. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 for violations of civil rights under the First and Fourteenth Amendments to the United States Constitution.

3. The case presents a federal question within this Court's jurisdiction under Article III, § 2 of the United States Constitution and 28 U.S.C. §§ 1331 and 1343.

4. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

5. Venue is proper in this Court under 28 U.S.C. § 1391 because the parties reside in this District, and a substantial part of the events giving rise to this claim occurred in this District.

## PARTIES

6. Plaintiff Mikkel Jordahl is a resident of Sedona, Arizona. He is the sole owner of a professional corporation law firm.

7. Plaintiff Mikkel (Mik) Jordahl, P.C. is an Arizona corporation. For the past twelve years, it has contracted with the Coconino County Jail District to provide legal advice to incarcerated individuals.

8. Defendant Mark Brnovich is the Arizona Attorney General. As the Attorney General, Mr. Brnovich is the chief law enforcement officer of the State of Arizona. A.R.S. § 41-192(A). Pursuant to A.R.S. § 41-194.01, Mr. Brnovich has the authority to investigate, at the request of a state legislator, whether actions of a county violate state law, to initiate legal proceedings if he concludes that a county's actions do or may violate state law, and to notify the Arizona State Treasurer if he concludes that a county's actions do violate state law so that the Treasurer will withhold and redistribute state shared monies. Mr. Brnovich also has the authority, pursuant to A.R.S. § 41-193(A)(2), to prosecute public officials and others for misappropriation of public monies under A.R.S. § 35-301. Mr. Brnovich is sued in his official capacity.

9. The Coconino County Jail District is a political subdivision of the State of Arizona. It is organized and established for the purpose of providing for in-custody detention and inmate-correctional housing in a County Detention Facility pursuant to A.R.S. § 48-4001 *et seq*. It is overseen and operated by the Coconino County Sheriff and the Coconino County Jail District Board of Directors. The County Board of Supervisors serves as the Board of Directors of the Jail District. *See* A.R.S. § 48-4002.

10. Defendant Jim Driscoll is the Coconino County Sheriff. Mr. Driscoll's duties include taking charge of and keeping the County Detention Facility pursuant to A.R.S. §§ 11-441(A)(5) and 48-4002(F). Mr. Driscoll is sued in his official capacity.

11. Defendant Matt Ryan is the chairman of the Coconino County Board of Supervisors and a member of the Board of Directors for the Coconino County Jail District. Mr. Ryan is sued in his official capacity.

12. Defendant Lena Fowler is vice-chair of the Coconino County Board of Supervisors and a member of the Board of Directors for the Coconino County Jail District. Ms. Fowler is sued in her official capacity.

13. Defendant Elizabeth Archuleta is a member of the Coconino County Board of Supervisors and a member of the Board of Directors for the Coconino County Jail District. Ms. Archuleta is sued in her official capacity.

14. Defendant Art Babbott is a member of the Coconino County Board of Supervisors and a member of the Board of Directors for the Coconino County Jail District. Mr. Babbott is sued in his official capacity.

15. Defendant Jim Parks is a member of the Coconino County Board of Supervisors and a member of the Board of Directors for the Coconino County Jail District. Mr. Parks is sued in his official capacity.

## STATEMENT OF FACTS

### The Act

16. In March 2016, the Arizona Legislature enacted HB 2617, codified at A.R.S. § 35-393 *et seq.* ("the Act"). The Act provides, in relevant part:

**A.R.S. § 35-393. Definitions**

In this article, unless the context otherwise requires:

1. "Boycott" means engaging in a refusal to deal, terminating business activities or performing other actions that are intended to limit commercial relations with Israel or with persons or entities doing business in Israel or in territories controlled by Israel, if those actions are taken either:

   (a) In compliance with or adherence to calls for a boycott of Israel other than those boycotts to which 50 United States Code § 4607(c) applies.

   (b) In a manner that discriminates on the basis of nationality, national origin or religion and that is not based on a valid business reason.

2. "Company" means a sole proprietorship, organization, association, corporation, partnership, joint venture, limited partnership, limited liability partnership, limited liability company or other entity or business association, and includes a wholly owned subsidiary, majority-owned subsidiary, parent company or affiliate.

   . . .

3. "Public entity" means this state, a political subdivision of this state or an agency, board, commission or department of this state or a political subdivision of this state.

**A.R.S § 35-393.01. Contracting; procurement; investment; prohibitions**

A. A public entity may not enter into a contract with a company to acquire or dispose of services, supplies, information technology or construction unless the contract includes a written certification that the company is not currently engaged in, and agrees for the duration of the contract to not engage in, a boycott of Israel.

17. The Act became effective on August 6, 2016.

18. The Act seeks to suppress participation in political boycott campaigns aimed at Israel and/or territories controlled by Israel, particularly Boycott, Divestment, and Sanctions ("BDS") campaigns. These campaigns seek to apply

5

economic pressure on Israel to protest the Israeli government's treatment of Palestinians and occupation of the Palestinian territories.

19. The Act's legislative findings state, *inter alia*: "Boycotts and related tactics have become a tool of economic warfare that threaten the sovereignty and security of key trade partners of the United States. The state of Israel is the most prominent target of such boycott activity."

20. In its press release announcing the introduction of HB 2617, the Arizona House of Representatives Republican Caucus explained that the Act will "target companies engaging in actions that are politically motivated," including politically motivated boycotts. One of the Act's sponsors, Representative Paul Boyer, said, "I stand proudly and publicly with Israel against those who would seek to delegitimize her. What detractors couldn't do militarily, they're now trying to do economically, which would harm the only democracy in the Middle East who stands shoulder to shoulder with the United States against all our enemies."

21. The Act's Committee Report states that "[t]here is no anticipated fiscal impact to the state General Fund associated with this legislation."

### Mr. Jordahl's Boycott Participation

22. Plaintiff Mikkel Jordahl comes from three generations of Lutheran ministers, including his father, two uncles, both grandfathers, and one great grandfather.

23. Mr. Jordahl's parents lived in the occupied West Bank for a year in 1977, while his father was on sabbatical, and Mr. Jordahl spent three months there with them. Both Mr. Jordahl and his parents were profoundly affected by what they saw in the occupied Palestinian territories. Upon his return to the United States, Mr. Jordahl established the Oberlin College chapter of the Palestine Human Rights

Campaign. He has continued to be involved in various human rights aspects of the Israeli-Palestinian conflict.

24. Mr. Jordahl's son was raised Jewish. Mr. Jordahl and his son took a trip to Israel and Palestine in the spring of 2017, after his son's Bar Mitzvah. They met with many Arab and Jewish people in Israel and the West Bank. They were disheartened to hear the common opinion that Israeli settlements in the occupied Palestinian territories would prevent an end to the occupation. Many of the Palestinians they met expressed no hope that they would ever receive equal rights in the occupied territories.

25. Mr. Jordahl has been moved by the Evangelical Lutheran Church in America's (ELCA) Peace Not Walls campaign, which seeks to promote the "equal human dignity and rights for all people in the Holy Land," as well as "an end to Israeli settlement building and the occupation of Palestinian land." The campaign calls on "individuals to invest in in Palestinian products to build their economy and to utilize selective purchasing to avoid buying products" made in Israeli settlements in the occupied Palestinian territories.

26. Mr. Jordahl is a non-Jewish member of Jewish Voice for Peace, which describes itself as "a national grassroots organization inspired by Jewish tradition to work for a just and lasting peace according to principles of human rights, equality, and international law for all the people of Israel and Palestine." Jewish Voice for Peace endorses the call from Palestinian civil society for Boycott, Divestment, and Sanctions campaigns to protest the Israeli government's actions, including the occupation of Palestinian territories.

27. In conjunction with these calls for boycott, Mr. Jordahl personally boycotts consumer goods and services offered by businesses supporting Israel's occupation of the Palestinian territories. Mr. Jordahl participates in this boycott to protest both the occupation and the settlements, which he believes violate the human

7

rights of Palestinians. He has also written his elected representatives to request a reduction in funding to Israel proportional to Israeli spending on settlements in the occupied Palestinian territories.

## The Coconino County Jail District Contract

28. Mr. Jordahl is the sole owner of a professional corporation law firm, Mikkel (Mik) Jordahl, P.C. ("the Firm"). For the past twelve years, the Firm has contracted with Coconino County Jail District ("the County") to provide legal advice to incarcerated individuals regarding issues like conditions of confinement, civil rights, extradition, and habeas corpus.

29. The current contract between the Firm and County covers a multi-year period, with annual renewals. Under the contract, the Firm receives a monthly payment of $1,533, or more than $18,000 per year.

30. The Firm first entered into the current contract in the fall of 2016. An official from the County asked Mr. Jordahl to sign not only the standard paperwork, but also a new form entitled "Certification Pursuant to A.R.S. § 35-393.01."

31. The certification form required the Firm's duly authorized signatory to sign below the following language:

> Pursuant to the requirements of A.R.S. § 35-393.01(A), the Independent Contractor hereby certifies that the Independent Contractor is not currently engaged in a boycott of Israel. The Independent Contractor further certifies that no wholly owned subsidiaries, majority-owned subsidiaries, parent companies, or affiliates of the Independent Contractor (if any) are currently engaged in a boycott of Israel. Independent Contractor further and additionally agrees that for the duration of this Independent Contractor Agreement, neither Independent Contractor, nor any wholly owned subsidiaries, majority-owned subsidiaries, parent companies, or affiliates of Independent Contractor (if any) shall engage in a boycott of Israel.
>
> For purposes of this certification, "boycott of Israel" shall mean engaging in a refusal to deal, terminating business activities, or performing other actions that are intended to limit commercial

relations with Israel or with persons or entities doing business in Israel or in territories controlled by Israel, if those actions are taken either: (a) in compliance with or adherence to calls for a boycott of Israel other than those boycotts to which 50 U.S.C. § 4607(c) applies; or (b) in a manner that discriminates on the basis of nationality, national origin or religion and that is not based on a valid business reason.

This Certification is hereby adopted as an integral and substantive part of the Agreement, and irrevocably supplements the terms thereof. Any violation of this Certification by the Independent Contractor shall constitute an event of material breach of the Agreement.

32. Mr. Jordahl signed the certification on October 14, 2016. He sent the original signed addendum to an official with the County. He also sent a copy of the signed form to Rose Winkeler, Deputy County Attorney of Coconino County, along with a letter entitled "Re: Israel Boycott Addendum to Inmate Civil Rights Advising Contract."

33. In the letter, Mr. Jordahl wrote, "I was extremely surprised to see the one page Addendum attached to the contract related to boycotts of Israel. . . . I understand this is a new state law and the county is bound to follow it. I will comply as long as the law is in effect, however I wanted it on record that I strongly oppose the law as I believe it is an unconstitutional violation of the 1st Amendment. I do reserve my right to challenge the law in the courts."

34. Mr. Jordahl further wrote, "I wanted to clarify that I sign the addendum in my capacity as a sole-proprietor contractor on behalf of my professional corporation and not in my personal capacity unrelated to any government contract. I am also interpreting the term 'affiliate' in the addendum and the law to apply only to formal business relationships."

35. The County accepted the certification. The contract commenced on November 10, 2016.

36. Because of the certification, Mr. Jordahl has been careful to separate his personal boycott participation from the operation of his Firm, which currently does not participate in Mr. Jordahl's boycott of consumer goods and services offered by businesses supporting Israel's occupation of the Palestinian territories. He has also been careful not to use his Firm to support or affiliate with entities participating in such boycotts.

37. On November 14, 2017, Mr. Jordahl received a letter regarding the renewal of his contract from the County. The letter, which was signed by Kathleen Levinson, the Administrative Manager of the Coconino County Sheriff's Office, asked Mr. Jordahl to sign and notarize the enclosed "agreement[ ] approved by [the County's] Board of Directors." After the request, Ms. Levinson wrote, "We look forward to our continuing partnership."

38. The enclosed agreement stipulated to a one-year renewal of the 2016 contract between the Firm and the County. The amended agreement did not change the contract's scope or compensation. The renewed contract would run from July 1, 2017, through June 30, 2018.

39. The renewal agreement also included another Certification Pursuant to A.R.S. § 35-393.01, which was substantially unchanged from the certification included in the 2016 agreement.

40. Mr. Jordahl has not signed and returned the 2017 agreement, because he objects to making the certification.

### **The Act's Effects**

41. The Act's certification requirement compels speech. Mr. Jordahl does not want to sign a certification about his Firm's boycott participation, but he fears a substantial loss of income if his Firm were to lose its government contract.

42. The certification requirement prevents government contractors from participating in or promoting protected political boycotts. Were it not for the Act's

certification requirement, Mr. Jordahl would extend his personal boycott participation to his Firm's consumer choices. For example, Mr. Jordahl would refuse to purchase Hewlett Packard equipment for his Firm, based on Hewlett Packard's provision of information technology services used by Israeli security checkpoints throughout the West Bank.

43. The certification requirement prevents government contractors from affiliating with individuals and organizations that participate in protected political boycotts. For example, Jewish Voice for Peace has asked Mr. Jordahl's Firm to contribute office support and financial contributions to their boycott activities. In order to comply with the certification, Mr. Jordahl has rejected these requests. Were it not for the certification requirement, Mr. Jordahl's Firm would provide support services and financial contributions, as well as pro bono legal services, to Jewish Voice for Peace and other boycott participants.

44. The certification requirement chills individual expression and association. Although Mr. Jordahl does not understand the certification to apply to his personal activities, he reasonably fears that vocal advocacy about his personal boycott participation would lead to suspicion about whether his Firm is complying with the certification. He has felt pressure not to promote or discuss his personal boycott participation in public.

45. Mr. Jordahl's boycott participation has no bearing on his provision of legal services to incarcerated individuals. Mr. Jordahl and his Firm do not, and would not, discriminate against clients or employees based on their nationality or any legally protected characteristic.

46. Although Mr. Jordahl does not want to sign the certification, he would otherwise like his Firm to continue providing legal services under contract with the County.

47. Defendants' unlawful actions are intentional.

48. Defendants' unlawful actions are taken either with malice or with reckless indifference to Plaintiffs' clearly established constitutional rights.

## CAUSE OF ACTION

### VIOLATION OF FIRST AND FOURTEENTH AMENDMENT RIGHTS
### 42 U.S.C. § 1983

49. Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

50. In the following paragraphs, references to the First Amendment include the First Amendment as applied to the states through the Fourteenth Amendment.

51. The politically motivated boycott of consumer goods and services offered by companies operating in Israel, and/or Israeli settlements in the occupied Palestinian territories, is speech and expressive activity related to a matter of public concern. It is therefore protected by the First Amendment.

52. Participation in this boycott, together with others who use boycott, divestment, and sanctions tactics, is protected association under the First Amendment.

53. Speech related to participation in this boycott is speech on a matter of public concern. It is therefore protected by the First Amendment.

54. **Restriction on Political Expression:** The certification requirement violates the First Amendment, both on its face and as applied, because it unduly restricts government contractors' ability to engage in core political expression and expressive activity, including participation in political boycotts.

55. **Content and Viewpoint Discrimination:** The certification requirement violates the First Amendment, both on its face and as applied, because it discriminates against protected expression based on the expression's content and

viewpoint. The requirement prohibits government contractors from boycotting Israel, Israeli businesses, or businesses supporting Israel's occupation of the Palestinian territories, while allowing contractors to participate in other boycotts, including boycotts of other foreign countries and "reverse boycotts" targeting companies engaged in boycotts of Israel.

56. **Overinclusiveness/Substantial Overbreadth:** The certification requirement violates the First Amendment because it is overinclusive and substantially overbroad.

57. **Ideological Litmus Test and Compelled Speech:** The certification requirement violates the First Amendment, both on its face and as applied, because it imposes an ideological litmus test and compels speech related to government contractors' protected political beliefs, associations, and expression.

58. **Discrimination Based on Political Beliefs and Associations:** The certification requirement violates the First Amendment, both on its face and as applied, because it bars government contractors from receiving government contracts based on their protected political beliefs and associations.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, and award the following relief:

A. Declare that the certification requirement contained in A.R.S § 35-393.01 violates the First and Fourteenth Amendments of the United States Constitution, both on its face and as applied to Plaintiffs;

B. Preliminarily and permanently enjoin Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction, from requiring government contractors to certify that they are not currently engaged in boycotts of

Israel and from penalizing government contractors based on their participation in political boycotts of Israel;

      C.     Alternatively, preliminarily and permanently enjoin Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction, from requiring Plaintiffs to certify that the Firm is not currently engaged in a boycott of Israel and from penalizing them based on their participation in a political boycott of Israel;

      D.     Award Plaintiffs their costs and reasonable attorneys' fees in this action;

      E.     Grant Plaintiffs such other relief as this Court may deem just and proper.

Dated this 17th day of January, 2018.

                      Respectfully submitted,

/s/ *Kathleen E. Brody*
Kathleen Brody, AZ Bar No. 026331
Darrell L. Hill, AZ Bar No. 030424
ACLU Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
kbrody@acluaz.org
dhill@acluaz.org

Brian Hauss*
Vera Eidelman*
Ben Wizner*
ACLU Foundation
Speech, Privacy & Technology Project
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
bhauss@aclu.org
veidelman@aclu.org
bwizner@aclu.org

*Admitted *pro hac vice*