| | |
|---|---|
| Brian J. Schulman (SBN 015286), schulmanb@gtlaw.com <br> Greenberg Traurig, LLP <br> 2375 E. Camelback Road, Suite 700 <br> Phoenix, AZ 85016 <br> Telephone: (602) 445-8000 <br> schulmanb@gtlaw.com <br><br> Gregory E. Ostfeld (pro hac vice application forthcoming) <br> Greenberg Traurig, LLP <br> 77 West Wacker Drive, Suite 3100 <br> Chicago, IL 60601 <br> Telephone: (312) 456-8400 <br> ostfeldg@gtlaw.com <br><br> *Attorneys for Amicus Curiae American Jewish Committee* | |

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Mikkel Jordahl; Mikkel (Mik) Jordahl, P.C., <br><br> Plaintiffs, <br><br> v. <br><br> Mark Brnovich, Arizona Attorney General; Jim Driscoll, Coconino County Sheriff; Matt Ryan, Coconino County Board of Supervisors Chair; Lena Fowler, Coconino County Board of Supervisors Vice Chair; Elizabeth Archuleta Coconino County Board of Supervisors Member; Art Babbott, Coconino County Board of Supervisors Member; Jim Parks, Coconino County Board of Supervisors Member; Sarah Benatar, Coconino County Treasurer, all in their official capacities, <br><br> Defendants. | NO. 3:17-CV-08263-DJH <br><br> **MOTION FOR LEAVE TO FILE BRIEF OF *AMICUS CURIAE* AMERICAN JEWISH COMMITTEE** |

Proposed *amicus curiae*, the American Jewish Committee ("AJC"), by its undersigned counsel, hereby respectfully moves the Court for leave to file *instanter* the accompanying Brief of *Amicus Curiae* American Jewish Committee (the "Amicus Brief"), a true and authentic copy of which is attached hereto as **Exhibit 1**. In support of its motion, AJC submits the following incorporated Memorandum of Points and Authorities:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The American Jewish Committee ("AJC") is a national organization dedicated to enhancing the well-being of Israel and the Jewish people worldwide and advancing human rights and democratic values in the United States and around the world. In accordance with its mission and values, AJC has spearheaded legislation and executive action to ensure that no unit of government is compelled to subsidize a contractor's decision to boycott Israeli goods or services. To that end, AJC supports the certification requirement contained in House Bill 2617, A.R.S. § 35-393 et seq. ("HB 2617" or the "Act"), which the present lawsuit seeks to enjoin and declare unconstitutional. AJC moves in this case for *amicus curiae* status, to defend the Arizona Legislature's enactment of HB 2617, and to demonstrate how the Act appropriately advances the State's legitimate interest in protecting its commerce with Israel and not allowing public funds to be used to subsidize invidious or discriminatory boycotts, without infringing on private citizens' First Amendment rights to free expression and association.

AJC can offer the Court important input on the legal and constitutional issues related to HB 2617, based on AJC's extensive involvement in and support for this Act and similar statutes and executive orders in numerous other States. As *amicus*, AJC will work to avoid duplicative and excessive briefing of matters already addressed in the State's Combined Response to Plaintiffs' Motion for a Preliminary Injunction and Motion to Dismiss. (Dkt. No. 28). By participating as an *amicus*, AJC respectfully submits it can have a meaningful voice in this case of public importance, without unduly burdening the Court or parties. *See Silver v. Babbitt*, 166 F.R.D. 418, 435 (D. Az. 1994) (recognizing the sufficiency of *amicus* status to ensure that outside parties' concerns "are fully considered by this Court without adding unnecessary volume of pleadings or lengthening these proceedings").

### II. INTEREST OF THE *AMICUS*

AJC is a national organization with more than 125,000 members and supporters

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

and 22 regional offices nationwide. It was founded in 1906 to protect the civil and religious rights of American Jews. Its mission is to enhance the well-being of Israel and the Jewish people worldwide, and to advance human rights and democratic values in the United States and around the world. AJC frequently speaks out on issues of public concern, including events in the Middle East, Israeli-Palestinian relations, and anti-Semitism.

AJC opposes the use of public funds to support the so-called Boycott, Divestment, and Sanctions ("BDS") movement, which markets itself as a non-violent movement to boycott, divest from, and sanction Israel with the putative goal of getting it to withdraw to its pre-1967 borders, but whose leadership in fact seeks and has actively promoted the elimination of Israel as a Jewish state. AJC has actively sought to rally elected officials to reject the BDS movement, and has been a leader in supporting legislation to ensure that no unit of government is compelled to subsidize invidious or discriminatory boycotts of Israeli goods or services. AJC supports the HB 2617, and opposed Plaintiffs' efforts to enjoin that Act and declare it unconstitutional.

Plaintiffs misconstrue and mischaracterize HB 2617 as a restraint on personal boycotts, as well as related acts of expression and association. That is not the Act's scope or effect. Though AJC vocally and vigorously opposes the BDS movement, it fully supports each citizen's right to engage in personal boycotts as an expression of his or her individual social, political, religious, or moral beliefs. The Act is not intended to reach, and should not reasonably be construed to reach, such personal conduct. Rather, the Act expresses the State's legitimate interest in ensuring that public funds are not used to subsidize a contractor's engagement in boycotts or other BDS activities that either impair the State's commerce with Israel or are carried out in a manner that discriminates on the basis of nationality, national origin or religion and that is not based on a valid business reason. The State is not obliged to expend public resources to subsidize such activities.

HB 2617 protects the State's legitimate government interest by requiring State

contractors to certify that they are not participating in such boycotts of Israel with respect to the contracted goods or services they are supplying. Protecting this interest need not and does not impede individual expression or association. The Act cannot be construed to prevent individuals from participating in boycotts in their personal capacities. And it cannot be construed to prevent individuals from expressing their personal views regarding boycotts or associating with others who share their views. AJC therefore respectfully requests leave to submit its *Amicus* Brief to clarify the legitimate and constitutional scope of the Act.

## III. ARGUMENT

### A. This Court Has the Authority to Permit *Amicus* Participation

The Federal Rules of Civil Procedure are silent on the subject of *amicus curiae* briefs at the district court level. *Cf.* Fed. R. App. P. 29 (governing filing of amicus briefs at the appellate level). Nonetheless, the Ninth Circuit has acknowledged this Court's inherent discretionary authority to appoint *amici* and receive *amicus* briefs. *See Fisher v. Arizona*, 594 Fed. Appx. 917, 919 (9th Cir. 2014); *All. of Nonprofits for Ins., Risk Retention Grp. v. Kipper*, 712 F.3d 1316, 1328 (9th Cir. 2013); *Hoptowit v. Ray*, 682 F.2d 1237, 1290 (9th Cir. 1982), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995). "District courts have broad discretion to appoint or reject *amici curiae*." *Friendly House v. Whiting*, No. CV 10-1061-PHX-SRB, 2010 WL 11452277, at *19 n.15 (D. Ariz. Oct. 8, 2010) (citing *Hoptowit*). "*Amici* may properly 'take a legal position and present legal arguments in support of it.'" *Id.* (quoting *Funbus Sys., Inc. v. Cal. Pub. Utils. Comm'n*, 801 F.2d 1120, 1125 (9th Cir. 1986) (internal citation omitted)). Indeed, "[d]istrict courts frequently welcome amicus briefs from non-parties concerning legal issues that have potential ramifications beyond the parties directly involved or if the amicus has 'unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.'" *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005), *disapproved on other grounds in later proceedings sub nom. Guidiville Band of*

*Pomo Indians v. NGV Gaming Ltd.*, No. C 04-3955-SC, 2005 WL 5503031 (N.D. Cal. Oct. 19, 2005), *rev'd in part, vacated in part*, 531 F.3d 767 (9th Cir. 2008).

This Court has repeatedly granted *amicus* status to allow an interested outside party to express its views on questions of public importance by means short of intervention. *See, e.g., WildEarth Guardians v. Provencio*, No. CV-16-08010-PCT-SMM, 2017 WL 4286189, at *1 (D. Ariz. Sept. 26, 2017); *Peters v. LifeLock Inc.*, No. CV-14-00576-PHX-ROS, 2014 WL 12544495, at *8 (D. Ariz. Sept. 19, 2014); *Harris v. Arizona Indep. Redistricting Comm'n*, No. CV-12-0894-PHX-ROS, 2012 WL 5835336, at *7 (D. Ariz. Nov. 16, 2012); *Grand Canyon Tr. v. U.S. Bureau of Reclamation*, No. CV-07-8164-PHX-DGC, 2010 WL 2643537, at *31 (D. Ariz. June 29, 2010), *aff'd in part, appeal dismissed in part*, 691 F.3d 1008 (9th Cir. 2012), *as amended* (Sept. 17, 2012). An *amicus* is not required to be disinterested in the outcome of a case. *Funbus Systems, Inc. v. California Public Utilities Com.*, 801 F.2d 1120, 1124-25 (9th Cir.1986). To the contrary, it is "perfectly permissible" for an *amicus* to "take a legal position and present legal arguments in support of it[.]" *Id*. at 1125. *See also Miller-Wohl Co. v. Commissioner of Labor & Industry*, 694 F.2d 203, 204 (9th Cir. 1982). *Amici* help the Court by "assisting in a case of general public interest, supplementing the efforts of counsel and drawing the court's attention to law that might otherwise escape consideration." *Funbus Systems*, 801 F.2d at 1125.

### B. AJC Should Be Granted Leave to File Its Proposed *Amicus* Brief

AJC has an interest in this litigation that aligns with, but differs in some respects from, the interests of the State of Arizona and the other state and local parties. As a vocal opponent of the BDS movement, and a strong supporter of HB 2617 and other statutes and executive orders pursuing similar aims across the country, AJC supports the Act's constitutionality and enforcement. At the same time, as an advocate of the civil and religious rights of American Jews, as well as human rights and democratic values in the United States and around the world, AJC has a strong interest in the exercise of free expression and association in support of one's personal political, religious, or moral

beliefs. AJC fundamentally disagrees with Plaintiffs' premise that HB 2617 impairs or impedes Plaintiffs' exercise of their expressive or associational rights, and respectfully seek leave to show this Court why the Act—and its statutory and executive counterparts in twenty-three other States—is not at odds with the First Amendment rights of free expression and free association.

AJC's proposed *Amicus* Brief takes the legal position and presents legal arguments that HB 2617 is constitutional as written and applied, and that it does not and, properly construed, cannot chill Plaintiffs' First Amendment rights in the manner asserted in their pleadings and moving papers. AJC respectfully submits that Plaintiffs have misconstrued and mischaracterized HB 2617 as applied to each Plaintiff, and that their fears about it are consequently misplaced. With respect to the individual named Plaintiff Mikkel Jordahl ("Mr. Jordahl"), AJC would show that he is correct in his acknowledged view that the Act does not apply to his personal participation in a political boycott, nor does it restrain or limit his activities of expression or association relating to his personal participation in such a boycott. Accordingly, his fears about his personal, vocal advocacy are ill-founded; he is free to continue to express himself. With respect to the law firm Plaintiff Mikkel (Mik) Jordahl, P.C. (the "Firm"), AJC would show that it is incorrect in its view that the Act in any way limits its expressive or associative activities. The Act only requires that a government contractor, in its capacity as a contractor, certify that it is not currently engaged in a boycott that impairs the State's commerce with Israel or is carried out in an unlawfully discriminatory manner. The State has the right to seek such a certification in furtherance of its legitimate interest in ensuring that it is not forced to subsidize invidious or discriminatory political boycotts at taxpayer expense. The enforcement of this legitimate interest does not prevent contractors from continuing to express their political views or to associate with organizations sharing their political views. The Firm remains free to express itself and to associate itself politically with other organizations.

For these reasons, AJC would show this Court that this lawsuit is not grounded in

the text, purpose, or scope of HB 2617 or any genuine restrictions it imposes, but rather in Plaintiffs' misreading of the Act and unnecessary self-imposed restraints that the Act neither sought nor required. To grant preliminary injunctive relief under these circumstances, where a plain text reading of the Act is sufficient to avoid constitutional concerns, is injudicious. Moreover, a hasty ruling by this Court granting such injunctive relief would impact not only the legitimate aims advanced by HB 2617, but could also serve as adverse precedent with respect to the laws of the twenty-three other States that have adopted legislation or executive orders toward the same end of protecting the States' commerce with Israel and preventing governmental subsidies of discriminatory boycotts. (Dkt. No. 28, App. A).

AJC believes these legal arguments and its supporting authorities would be helpful to the Court in its review, analysis, and disposition of Plaintiffs' pending motion for preliminary injunction. No party and no counsel for a party (a) authored the *Amicus* Brief in whole or in part, (b) requested or solicited AJC's involvement or the *Amicus* Brief, or (c) made any monetary contribution intended to fund the preparation or submission of the *Amicus* Brief. AJC therefore requests leave to file its *Amicus* Brief with the Court.

WHEREFORE, AJC respectfully requests that the Court (1) grant AJC leave to file its *Amicus* Brief, *instanter*; and (2) grant such other and further relief as the Court deems necessary or appropriate.

DATED this 2nd day of February, 2018.

GREENBERG TRAURIG, LLP

By: */s/ Brian J. Schulman*
Brian J. Schulman
Gregory E. Ostfeld
(*pro hac vice* application forthcoming)

*Counsel for Amicus Curiae*
*American Jewish Committee*

**CERTIFICATE OF SERVICE**

☒   I hereby certify that on February 2, 2018, I electronically transmitted the attached document to the Clerk's Office using CM/ECF System for filing and distribution to all registered participants of the CM/ECF System:

By: */s/ Amy L. Hershberger*
Employee, Greenberg Traurig, LLP