Kathleen E. Brody, No. 026331
Darrell L. Hill, No. 030424
ACLU Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
kbrody@acluaz.org
dhill@acluaz.org

Brian Hauss (*pro hac vice*)
Vera Eidelman (*pro hac vice*)
Ben Wizner (*pro hac vice*)
ACLU Foundation, Speech, Privacy & Technology Project
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
bhauss@aclu.org
veidelman@aclu.org
bwizner@aclu.org

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Mikkel Jordahl; Mikkel (Mik) Jordahl, P.C., <br><br> Plaintiffs, <br> v. <br><br> Mark Brnovich, Arizona Attorney General; Jim Driscoll, Coconino County Sheriff; Matt Ryan, Coconino County Jail District Board of Directors Member; Lena Fowler, Coconino County Jail District Board of Directors Member; Elizabeth Archuleta, Coconino County Jail District Board of Directors Member; Art Babbott, Coconino County Jail District Board of Directors Member; Jim Parks, Coconino County Jail District Board of Directors Member, all in their official capacities, <br><br> Defendants. | No. 3:17-cv-08263-PCT-DJH <br><br> **PLAINTIFFS' OPPOSITION TO THE STATE'S EMERGENCY MOTION TO STAY THE COURT'S SEPTEMBER 27, 2018 ORDER PENDING APPEAL** |

1

## INTRODUCTION

After fully considering the parties' briefing and evidence regarding the preliminary injunction sought by Plaintiffs Mikkel Jordahl and Mikkel (Mik) Jordahl, P.C. ("Plaintiffs") and the motion to dismiss by Defendants Arizona Attorney General Mark Brnovich and the State of Arizona (collectively, the "State")—including deposition testimony, affidavits, legislative history, and supplemental filings—and holding oral argument on both motions, this Court issued a carefully reasoned 36-page Order ("Order") on September 27, 2018. Doc. 63. The Order denies the State's motion to dismiss and enjoins Defendants from enforcing A.R.S. § 35-393.01(A) ("Certification Requirement") until further order of the Court. *Id.* The State now seeks to stay the Order pending appeal. Doc. 67.

The Court should deny the State's motion. The Court assessed almost identical arguments in deciding to issue its Order. The Court held that it is Plaintiffs who "have shown that they are likely to succeed on the merits of their claim, that they are likely to suffer irreparable harm in the absence of a preliminary injunction, and that the balance of equities and public interest favor an injunction." Doc. 63 at 36. Although the State predictably objects to nearly all of the Court's findings and conclusions, it fails to offer any new arguments, evidence, or authority in support of its emergency stay motion.

## ARGUMENT

A stay pending appeal is "not a matter of right," but "an exercise of judicial discretion," and the party seeking the stay "bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009).

The inquiry includes four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). "The first two factors . . . are the most critical." *Nken*, 556 U.S. at 434.[1]

---

[1] The Ninth Circuit applies a continuum test for stays pending appeal. *Golden Gate Restaurant Ass'n v. City & Cty. of S.F.*, 512 F.3d 1112, 1115–16 (9th Cir. 2008). "At one end of the

Importantly here, "[t]here is substantial overlap between these and the factors governing preliminary injunctions." *Id.* Thus, the Court has already evaluated almost identical factors in deciding to issue a preliminary injunction, and has already considered, and rejected, the State's arguments. But whereas Plaintiffs previously bore the burden of demonstrating that a preliminary injunction was justified, the State now bears the burden of demonstrating that the injunction should be stayed. For the reasons stated below and in Plaintiffs' prior briefing, *see* Docs. 6, 39, the Court should deny the State's request for a stay.

### I.   The State Is Unlikely to Succeed on the Merits

The State cannot make "a strong showing that [it] is likely to succeed on the merits." *Nken*, 556 U.S. at 434 (quoting *Hilton*, 481 U.S. at 776). That showing requires more than a "'better than negligible'" chance, or a "mere possibility," of success. *Id.*

The Court has already considered the merits of this case and determined that the State is not likely to succeed. Doc. 63 at 18–34. Instead, the Court determined that Plaintiffs are likely to prevail because "the conduct implicated by the terms of the Act encompasses expressive activity that is protected under the First Amendment," and "the State's proffered interests do not justify the infringement the Certification Requirement imposes on such expressive conduct." *Id.* at 20. The State now attacks both of those conclusions.

*First*, the State argues that it is likely to succeed because "Plaintiffs' First Amendment claim raises issues of first impression both in this Court and in the Ninth Circuit, and the law in this area is at least 'somewhat unclear.'" Doc. 67 at 3. To support this position, the State again ignores *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982), and continues to insist that *International Longshoremen's Ass'n, AFL-CIO v. Allied Int'l, Inc.*, 456 U.S. 212 (1982) and *Rumsfeld v. Forum for Academic & Institutional Rights, Inc. ("FAIR")*, 547 U.S. 47 (2006)

---

continuum, the moving party is required to show both a probability of success on the merits and the possibility of irreparable injury. . . . At the other end of the continuum, the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor. These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.* (citations and internal quotation marks omitted). As discussed in the text above, the State fails to show either a probability of success or the possibility of irreparable injury, much less some combination of the two; thus, it cannot satisfy the Ninth Circuit's test.

must govern here, because political boycotts like those at issue in this case are not inherently expressive. Doc. 67 at 3–5. But the law regarding compelled speech and political boycotts is clear, and accepting the State's argument would require the Court to ignore it.

As the Court explained in the Order, the types of boycotting activities contemplated by the Certification Requirement "clearly include 'the practice of persons sharing common views banding together to achieve a common end'" and "implicate[ ] the rights of assembly and association that Americans and Arizonans use 'to bring about . . . change.'" Doc. 63 at 22, 24. The Supreme Court has "expressly found" that these sorts of activities—that is, "non-union boycotting activities aimed 'to bring about political, social and economic change'"—"[are] protected activities under the First Amendment." *Id.* at 21 (quoting *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 907 (1982)); *see also Claiborne,* 458 U.S. at 913 (identifying "peaceful political" boycotts as a form of "expression on public issues" that "has always rested on the highest rung of the hierarchy of First Amendment values.").

As this Court explained in the Order, the State's reliance on *Longshoreman* to argue otherwise "overstate[s] [the case's] meaning." Doc. 63 at 21. *Longshoremen* "was decided in the context of federal labor laws" and "[i]ndeed, only a few months [later], the Supreme Court in *Claiborne* expressly found that non-union boycotting activities aimed 'to bring about political, social and economic change' were protected activities under the First Amendment." *Id.* at 21 (quoting *Claiborne*, 458 U.S. at 907). Thus, it is *Claiborne* and not *Longshoremen* that controls here. The State's reliance on *Rumsfeld* is similarly misguided. Whereas *Rumsfeld* held that blocking military recruiters from law school campuses is not inherently expressive conduct, *Claiborne* held that political boycotts of consumer goods are inherently expressive. Doc. 63 at 23–24; *see also Koontz v. Watson*, 283 F. Supp. 3d 1007, 1024 (D. Kan. 2018) (finding *Rumsfeld* inapplicable because political boycotts, including BDS boycotts, are inherently expressive). Although the State insists that *Rumsfeld* involved "boycotting conduct" by law schools, the word "boycott" appears nowhere in the Supreme Court's decision.

*Second*, because the Certification Requirement infringes Plaintiffs' First Amendment rights, the State must show that it "has a 'necessary impact on the actual operation' of the State'" in order for the Requirement to survive constitutional scrutiny. Doc. 63 at 32 (quoting *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 468 (1995)). The State can do this only by demonstrating "that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way.'" *Id.* at 33 (quoting *Nat'l Treasury*, 513 U.S. at 475). In its motion to stay, much like in its prior briefing, the State has failed to offer any evidence for such a showing. Indeed, Arizona's own legislative fact sheet plainly states the opposite—that "[t]here is no anticipated fiscal impact to the state General Fund associated with this legislation." *Id.* (quoting AZ S. F. Sheet, 2016 Reg. Sess. H.B. 2617).

Instead of demonstrating actual harms, the State has offered only "speculative fears of subsidizing boycotts of Israel." *Id.* at 34. The State asserts in its stay motion that "[m]oney is fungible, and the provision of public funds inevitably results in a subsidization of the activities of the fund recipient." Doc. 67 at 5. This is identical to the State's argument at the preliminary injunction stage that "[a]bsent the Act's prohibitions, public monies will almost certainly be allocated to companies engaged in boycotts of Israel, thereby subsidizing those boycotts." Doc. 63 at 33–34 (quoting Doc. 28 at 25). The Court rightly rejected the argument then and should do so again. Once again, the State fails to explain how paying a contractor to perform a service "subsidizes" the contractor's independent boycott activity, any more than paying a public employee to perform a job subsidizes the employee's expression outside of work.[2]

---

[2] Moreover, accepting the State's speculative argument would undercut an entire line of First Amendment cases regarding unconstitutional conditions on government funds—including *Regan v. Taxation With Representation of Washington*, 461 U.S. 540 (1983), which the State cites in a strained attempt to argue otherwise. As this Court explained, in upholding the "requirement that non-profit organizations seeking tax-exempt status not engage in substantial efforts to influence legislation," the Supreme Court in *Regan* specifically noted that the requirement "was not 'unduly burdensome' because [it] did not prohibit organizations from lobbying altogether." Doc. 63 at 29, n.9. Indeed, as this Court recognized, the Supreme Court has repeatedly held that, while the government may be able to restrict what private entities do with government funds, it cannot restrict their expressive activity outside the scope of the government program. *Id.* (citing *Agency for Intern. Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 219 (2013); *Rust v. Sullivan*, 500 U.S. 173, 197 (1991); *FCC v. League of Women Voters of California*, 468 U.S. 364, 399-401 (1984); and *Regan*, 461 U.S. at 546).

Finally, the State argues that it is likely to succeed on the merits because the Court "wrongly discounted" its stated interest in preventing discrimination. Doc. 67 at 6. As Plaintiffs discussed in their briefs in support of the preliminary injunction, the Certification Requirement is not an anti-discrimination law. It applies to group boycotts of Israel, or territories controlled by Israel, regardless of whether they are undertaken in a manner that discriminates on the basis of nationality, national origin, or religion. Doc. 39 at 22 (citing A.R.S. § 35-393(1)). It also does not prohibit discrimination generally, but instead impermissibly targets political boycotts of one country, Israel, based on hostility to their message. *Id.* (citing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 396 (1992)). As the Court observed, "the Act's history . . . suggests that the goal of the Act is to penalize the efforts of those engaged in political boycotts of Israel and those doing business in Israeli-occupied territories because such boycotts are not aligned with the State's values," which "is constitutionally impermissible." Doc. 63 at 33.

The Court found that the State has "produced no evidence that Arizona businesses have or are engaged in discriminatory practices against Israel, Israeli entities, or entities that do business with Israel." *Id.* at 34. The State still has not produced any such evidence. Instead, it simply asserts that the political boycotts it seeks to suppress are inherently discriminatory. This is quite wrong. Indeed, the boycott in which Plaintiffs want to participate is based not on any entity's national origin, but rather on "actions taken by Israel in relation to Palestine," which "are matters of much political and public debate." *Id.* at 32. As the Court recognized, "even if the State could [show that it was combatting discrimination], by including politically-motivated boycotts of Israel within the activity that is prohibited, the Act is unconstitutionally over-inclusive." *Id.* at 34 (citing *Koontz*, 283 F. Supp. 3d at 1023). The State has failed to offer any new legal arguments or factual evidence that could change this analysis.

**II.     The State Will Not Be Irreparably Injured Absent a Stay**

The State also cannot show that it "will be irreparably injured absent a stay." *Nken*, 556 U.S. at 426 (quoting *Hilton*, 481 U.S. at 776). As with the first factor, "simply showing some possibility" of irreparable injury is not enough to satisfy the State's burden. *Id.* at 434.

6

The State argues that it "by definition suffers irreparable harm when it is precluded from carrying out the laws passed by its democratic processes." Doc. 67 at 7. But it is axiomatic that this principle cannot apply where the law at issue is unconstitutional. *See, e.g., Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) (recognizing an injunction of a law as harm to the government only after "already h[o]ld[ing that the preliminary injunction] rests on an erroneous legal premise"). As the Court held when granting the preliminary injunction, the State will "experience little to no hardship by enjoining the enforcement of a law that does nothing to further any economic state interest and infringes on First Amendment protections." Doc. 63 at 35; *id.* at 36 ("There is no realistic likelihood that Defendants will be harmed by being enjoined from enforcing a law that violates the First Amendment on its face.").

The State also contends that "[t]he preliminary injunction's effect is . . . to cause a massive upheaval in the State's procurement systems" because it will impact "hundreds of new contracts in the next six months to one year." Doc. 67 at 8. Even accepting that bringing the contracts in line with constitutional requirements could somehow constitute an "upheaval," the State has failed to establish how compliance with the Court's Order would burden its procurement system. The State should be able to remove the Certification Requirement just as smoothly as it introduced it—for example, by removing the Israel Boycott Form, SPO Form 205, from the State website that houses standard forms and documents, *see* Standard Forms and Documents, Ariz. Dep't of Admin. Procurement, https://spo.az.gov/administration-policy/state-procurement-resource/standard-forms-and-documents (last accessed Oct. 5, 2018), and by simply not requiring or accepting this form as part of its contracting process. Indeed, the State has failed to offer any evidence of the burden it anticipates, or any legal citation to a court order granting a stay for this reason in similar circumstances.

Finally, the State argues that "this is likely to cause substantial uncertainty." Doc. 67 at 8. The State's position appears to be that the Order enjoins it only from "tak[ing] . . . action to enforce the anti-Israel-Boycott certification," *id.*, and that it may still require contractors to sign the certification. If so, the State has misread the Order, which plainly prohibits the State from

enforcing the statute by requiring its contractors to sign the unconstitutional certification. Doc. 63 at 36 ("Until further order of the Court, Defendants are enjoined from enforcing A.R.S. § 35-393.01(A)"). If the State properly enforces the Court's preliminary injunction, no uncertainty should arise. Thus, the State has failed to establish either of the first two "most critical" factors for a stay.

### III.     Issuance of the Stay Would Substantially Injure Other Interested Parties.

As this Court held in the Order, the harm caused by allowing continued enforcement of the Certification Requirement is "irreparable per se"—and it extends not only to Plaintiffs, but also to all other companies wishing to contract with the State of Arizona. *Id.* at 35. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). This is especially true when the "expressive conduct that is so burdened is political in nature." *Id.* (citing *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009)).

The State argues that "Plaintiffs' harms are minimal" and "entirely conjectural" because "there is every reason to believe that Plaintiffs will ultimately be paid for [their] work." Doc. 67 at 2. This entirely ignores the First Amendment harms Plaintiffs and other contractors would suffer without the injunction. They would be again forced to choose between (a) signing the anti-boycott certification, not joining in an expressive boycott, and contracting with the state, or (b) refusing to sign and forgoing their livelihood. Lifting the injunction would therefore inevitably chill Plaintiffs' "and other putative state contractors' speech rights." *Koontz*, 283 F. Supp. 3d at 1026.

### IV. The Public Interest Lies in Denying a Stay

Finally, the public's interest will be best served by denying the State's motion. The Ninth Circuit has "consistently recognized the 'significant public interest' in upholding free speech principles, as the 'ongoing enforcement of the potentially unconstitutional regulations . . . would infringe not only the free expression interests of [plaintiffs], but also the interests of other

people' subjected to the same restrictions." *Klein*, 584 F.3d at 1208 (alterations and omission in original) (quoting *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002)).

As in its prior briefing, the State argues that the Court should defer to the Legislature, which "has already defined the public interest." Doc. 67 at 8. But, as the Court has already held, "the public has little interest in enforcement of unconstitutional laws." Doc. 63 at 35. Rather, the public interest is best served "by following binding Supreme Court precedent and protecting the core First Amendment right of political expression." *Homans v. City of Albuquerque*, 264 F.3d 1240, 1244 (10th Cir. 2001). Moreover, in this case, the State has failed to identify any legitimate public interests actually served by the Certification Requirement. *See* Doc. 63 at 32–34. Thus, not one of the stay factors weighs in the State's favor.

## CONCLUSION

For the foregoing reasons, the Court should deny the State's motion for stay pending appeal of the Order.

Respectfully submitted this 5th day of October, 2018.

By: */s/ Brian Hauss*
Brian Hauss (*pro hac vice*)
Vera Eidelman (*pro hac vice*)
Ben Wizner (*pro hac vice*)
ACLU Foundation
Speech, Privacy & Technology Project
125 Broad Street, 18th Floor
New York, NY 10004

Kathleen E. Brody
Darrell L. Hill
ACLU Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, AZ 85014

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all parties.

By: */s/ Brian Hauss*
Brian Hauss (*pro hac vice*)
ACLU Foundation
Speech, Privacy & Technology Project
125 Broad Street, 18th Floor
New York, NY 10004